Richard GAYLORD *v.* STATE of Arkansas

CR 02-1370

127 S.W.3d 507

Supreme Court of Arkansas
Opinion delivered October 30, 2003

*John Joplin*, Deputy Public Defender, for appellant.

*Mike Beebe*, Att'y Gen., by: *Clayton K. Hodges*, Ass't Att'y Gen., for appellee.

Tom Glaze, Justice. This case was certified to us from the Court of Appeals because the appeal involved the interpretation of the Arkansas Constitution. After this case was submitted for decision, this court has determined that the appellant, Richard Gaylord, did not have standing to raise the constitutional issue. Consequently, we must affirm on that basis.

This case commenced as a result of an investigation by the Sebastian County Sheriff's and the Barling Police Departments after receiving reliable and recent information from a DEA Task Force officer that a methamphetamine laboratory was in operation in a trailer located in Barling. The investigating officers went to the trailer to speak to the occupants in order to obtain sufficient evidence to obtain a search warrant. After they had knocked on the door and walls of the trailer for about five minutes, Gaylord came to the door; when he opened it, the officers smelled a strong odor of methamphetamine being cooked. The crux of Gaylord's argument on appeal is that he was seized without a warrant the moment he opened the door of the trailer, and that the evidence gained when he opened the door was the fruit of an illegal seizure and intrusion. He asserts that this knock-and-talk procedure violates the Arkansas Constitution, citing this court's holding in *Griffin v. State*, 347 Ark. 788, 67 S.W.3d 582 (2002).

Gaylord first argues that the officers' knock-and-talk procedure violates the Arkansas Constitution. However, it is readily apparent that Gaylord does not have standing to challenge the search and seizure or knock-and-talk procedures orchestrated by the officers under the Arkansas or the United States Constitutions.

The problem with Gaylord's argument is that the trailer where the knock-and-talk was conducted was not his home. The rights secured by the Fourth Amendment are personal in nature. *Rakas v. Illinois*, 439 U.S. 128 (1978). Thus, a defendant must have standing before he can challenge a search on Fourth Amendment grounds. *Id.*; *Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993). A person who is aggrieved by an illegal search and seizure only through introduction of evidence secured by the search of a third person's premises or

property has not had any of his Fourth Amendment rights violated. *Alderman v. United States*, 394 U.S. 165 (1969); *Duck v. State*, 346 Ark. 148, 61 S.W.3d 135 (2001).

In *Mazepink v. State*, 336 Ark. 171, 987 S.W.2d 648 (1999), this court stated that, under the Fourth Amendment, evidence should not be excluded unless the court finds that an unlawful search or seizure violated the defendant's own constitutional rights; his rights are violated only if the challenged conduct invaded his legitimate expectation of privacy, rather than that of a third party. *See also Davasher v. State*, 308 Ark. 154, 823 S.W.2d 863 (1992) (citing *Rakas, supra*). The proponent of a motion to suppress bears the burden of establishing that his Fourth Amendment rights have been violated. *McCoy v. State*, 325 Ark. 155, 925 S.W.2d 391 (1996).

When Gaylord took the stand at the suppression hearing, he stated not once, but four times, that the trailer being searched was not his home:

- "I was at a friend of mine's house, at a friend's trailer, George Stone."

- "Then, I had walked outside and . . . they had asked me if they could search and I told them that it wasn't my house and I said, 'I don't live there, so I can't let them search, you know, someone else's house.'"

- Q: So, how long had you been staying there before the officers showed up?

  A: I got there about 1:00 that morning.

- Q: Did you have a residence at that time?

  A: Yes, ma'am.

  Q: Why didn't you just go back to your house, or did you?

  A: That's where I had went.

  Q: Where would that residence have been?

  A: In Mountainburg.

In addition, Detective Doug Mitchell testified that Gaylord told him that he did not live in the trailer. Clearly, the trailer that the officers searched was not Gaylord's home; rather, it belonged to a third person, George Stone. In *Davasher, supra,* this court affirmed the trial court's denial of a motion to suppress, holding that "[t]he mere fact that Davasher frequently stayed at his mother's home does not give him a reasonable expectation of privacy in the premises. Davasher did not show that he owned, leased, or maintained control over the house." *Davasher,* 308 Ark. at 163. Similarly, Gaylord offered no proof that he owned, leased, or maintained any control over the trailer that was searched. Therefore, Gaylord had no standing to bring a constitutional challenge to the search.

Affirmed.